EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CHARLES E. LAWTON, acusado y apelante.

Núm. 6000.—*Sometido:* Junio 4, 1936. *Resuelto:* Noviembre 13, 1936.

*F. Soto Gras* y *R. Díaz Collazo,* abogados del apelante; *R. A. Gómez, Fiscal* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

El Fiscal Especial General formuló denuncia, en la que alega que en uno de los días del mes de septiembre de 1931,

mientras ocupaba el cargo de Director General del Banco Comercial de Puerto Rico, el acusado tomó a préstamo de los fondos del mencionado Banco la suma de $850, sin la aprobación de la mayoría absoluta de los directores de dicha institución bancaria, sin la aprobación de la Comisión de Hacienda, y sin la aprobación de la comisión nombrada por dicho banco para la consideración y autorización de préstamos. Se alega que los hechos denunciados constituyen un delito de infracción a la sección 15 (inciso 4) de la Ley núm. 18 de 1923, ((2) pág. 83), enmendada por la Ley núm. 68 de 1925 (pág. 353), que lee así:

"Ningún director, oficial, empleado o agente de un banco o banco extranjero, podrá vender o descontar obligación alguna a tal banco o tomar un préstamo en dicho banco o banco extranjero, sin la aprobación de la mayoría absoluta de sus directores, o de la comisión de hacienda o cualquier otra comisión regularmente nombrada para la consideración y autorización de préstamos. Cualquier persona que intencionalmente infrinja las prescripciones de esta disposición, será culpable de delito menos grave y será castigada con una multa igual por lo menos a dos veces la cantidad que hubiere tomado, o con prisión por un período que no exceda de dos años; y el oficial, agente o empleado del banco o banco extranjero que hiciere el préstamo será culpable de delito menos grave (*misdemeanor*) y será castigado con multa igual a dos veces la cantidad que se hubiere prestado y con prisión por un período que no exceda de dos años."

Habiendo sido sentenciado al pago de una multa de $1,700, y en su defecto a un día de cárcel por cada dólar que dejare de satisfacer, sin que la prisión pueda exceder de noventa días, el acusado apeló.

Nueve son los errores señalados y discutidos en el alegato del apelante. Los cinco primeros y el séptimo están relacionados con la admisión de la evidencia; y el sexto se refiere a la negativa de la corte a ordenar la absolución perentoria del acusado.

El único testigo de cargo fué el Sr. Juan Diez de Andino, quien declaró:

Que en la fecha a que se contrae la acusación el declarante ocupaba el cargo de Subgerente del Banco Comercial, del que era Director Gerente el acusado; que el 10 de septiembre de 1931, el acusado, en su carácter oficial, le ordenó expedir una carta de crédito por $850 a favor de su hija Eleonor Lawton; que el declarante expidió la carta de crédito, la entregó al acusado y éste a su hija; que el 16 del mismo mes la señorita Lawton cobró $50 en el Chase National Bank, en New York, con cargo a dicha carta de crédito, siendo pagados los $800 restantes, a la misma Srta. Lawton, por el mismo banco el 24 de septiembre, 1931; que cuando llegaron los avisos de haber sido pagado el montante de la carta de crédito, el declarante requirió al acusado para que le entregase los $850 para entregarlos al Chase National Bank y que el acusado le ordenó entonces que los cargara a su cuenta en "partidas en suspenso", lo que llevó a efecto el declarante, cargando $850 a la cuenta del acusado, en "partidas en suspenso", y abonando igual suma a la cuenta del Chase National Bank con el Banco Comercial; que la frase "partida en suspenso" quiere decir que la cantidad prestada está en suspenso, que queda pendiente; que como el declarante no recibió los $850 en efectivo, tuvo que cargarlos, según las instrucciones del acusado, a su cuenta de "partidas en suspenso."

Repreguntado por la defensa, dijo: Que la que expidió el declarante al acusado era una carta de crédito en blanco, de las que usaba el Banco Comercial, que tenía en fideicomiso; que esas cartas de crédito procedían del Chase National Bank en Puerto Rico, con un límite de hasta cinco mil dólares, y eran sencillamente una orden de pago del Banco Comercial al Chase National Bank, que era el que tenía que hacer el pago; que esas cartas de crédito no se devolvían al Comercial y quedaban archivadas en el Chase después de cumplida la orden de pago, y que la carta de crédito expedida en este caso está allá en los *files* del Chase; que la solicitud del acusado para que se le expidiera la carta de

crédito fué hecha verbalmente; que el declarante no obtuvo el consentimiento de ninguna otra persona para expedir la carta de crédito; que el declarante expidió la carta de crédito e hizo constar su expedición en el libro que se lleva en el banco con ese fin; y que el acusado tuvo otras operaciones de crédito con el mismo Banco, las que se anotaron también como partidas en suspenso.

El acusado alegó como defensa que el préstamo había sido autorizado por el voto de una mayoría de los miembros del Comité de Hacienda del banco, y para establecer esa defensa ofreció como prueba un *affidavit* suscrito por los señores W. Körber, M. Camblor, E. Adsuar y J. León, quienes hacían constar que en septiembre 10, 1931, el acusado solicitó autorización del Comité Ejecutivo para la expedición de una carta de crédito por $850, y que los declarantes, como miembros de dicho Comité Ejecutivo, autorizaron debidamente la operación. Y habiendo sido rechazado el citado *affidavit,* el acusado presentó entonces como testigo de defensa al Sr. William Körber, quien declaró:

Que era Vicepresidente del Banco Comercial y miembro del Comité Ejecutivo; que dicho comité se reunió el 10 de septiembre de 1931, estando presentes el acusado, el Sr. Camblor, el Sr. Adsuar, el Sr. León y el declarante; que el acusado solicitó la carta de crédito en cuestión, y que el comité le dijo que sí, que estaba autorizado para coger esa carta, como lo había hecho en años anteriores; que en otros años había solicitado cartas similares para su hija; (repreguntado por el fiscal) que el Comité Ejecutivo tenía un libro donde se hacían constar todos sus acuerdos; que se levantó un acta de la sesión de septiembre 10, 1931, y en ella se hicieron constar todos los acuerdos tomados, menos el referente a la carta de crédito en cuestión.

Al terminar de declarar el testigo William Körber, el fiscal y el abogado defensor estipularon que los señores Adsuar, Camblor y León, quienes en union del Sr. Körber constituían una mayoría de los miembros del Comité Eje-

cutivo del banco, si fueran llamados a declarar lo harían en los mismos términos en que lo había hecho el Sr. Körber.

El estudio detenido de la evidencia presentada por el fiscal, para sostener la acusación, nos lleva a la conclusión de que el tribunal inferior erró al negarse a decretar la absolución perentoria del acusado. No bastaba que el fiscal probase el hecho de la contratación del préstamo. Era necesario además que probase, como elemento esencial del delito, que el acusado había tomado la suma de $850, en calidad de préstamo, y sin el consentimiento de una mayoría de los directores o funcionarios del banco facultados para considerar y autorizar préstamos. El hecho de que en los libros de actas del Banco no apareciera una constancia de haberse aprobado el préstamo al acusado, no es por sí solo suficiente para establecer la falta de autorización. Además de la insuficiencia apuntada, el acusado probó con el testimonio de una mayoría de miembros del Comité Ejecutivo del banco que ellos habían aprobado el préstamo, como lo habían hecho en años anteriores. Esas declaraciones no fueron impugnadas o contradichas y la corte inferior debió darles crédito.

No estamos convencidos de que el acusado haya cometido el delito que se le imputa y somos de opinión que la sentencia recurrida *debe ser revocada y absuelto el acusado.*

Los Jueces Señores Prèsidente del Toro y Asociado Córdova Dávila no intervinieron.